Okay, Mr. Dodson. Good morning, and may it please the Court. My name is Jonathan Dodson. I'm representing Paul Harris. I intend to focus today on the sufficiency of the evidence to prove Hobbs Act extortion as to three elements, and those are an inmate's consent, whether that consent was induced by fear and the existence of a quid pro quo. And my argument is twofold, that the evidence was not sufficient to prove a number of the facts asserted by the government in support of its theory of guilt, and moreover, even if the evidence had proven those facts, what the government described does not legally qualify as Hobbs Act extortion. The only evidence of how Mr. Dodson... Robert Dodson Let's talk about consent. Jonathan Dodson Sure. Robert Dodson Consent in the extortion context is not like consent in other areas of law, like contracts, right? There's always an element of coercion in extortion, right? Jonathan Dodson Yes, I agree with that. Robert Dodson And so when this prison guard seizes the green dot numbers from the prisoners and says, you've been stealing, now I'm going to steal from you, they don't object to it. They don't report him. They know he can report them. They've been involved in an illegal scheme, and it may be a coerced consent, but they're consenting to that, aren't they? Jonathan Dodson I disagree, and I would make a distinction between compliance and consent, which would apply to robberies and extortion in all kinds of cases. A person who's robbed at gunpoint, a bank teller doesn't consent, but they may comply. But then they report him. Jonathan Dodson But they may report him. Right, and that didn't happen here. Jonathan Dodson Well, there was no evidence of whether an inmate did or did not file an administrative remedy. There was no evidence of an administrative remedy that existed outside of this disciplinary review process that Agent Tripp testified about. But there was evidence that, I think, was it the prisoner named Oliver testified that he didn't report it? Correct, and he testified that he didn't report it out of his self-interest. He testified that he would have incriminated himself, not because he had an agreement with the officers who took those green dot numbers for him, and that's the difference. Let's look at it this way. So there's a drug dealer who's down at the corner a couple of blocks from here, and a police officer who's responsible for patrolling that area of the street sees what appears to be, some furtive behavior, appears to be a drug deal. So he approaches the dealer and he says, I know what you just did, and now you're going to give me half of what you just earned. And so the dealer pays him half the money or gives him maybe even all the money, and the officer goes his merry way. The drug dealer keeps coming back and doing deals, and sometimes the officer sees him and approaches him and asks for that money, and sometimes he doesn't. The drug dealer doesn't complain. He wouldn't do that because he would incriminate himself. But the officer keeps taking the money too. Extortion? It would depend on a couple of things. If he just patted that drug dealer down, took the money, and then said, I'm going to keep this, that would not be extortion, any more than it would be in the context of a legal search. We wouldn't say that a— Well, he says, let's not change the facts. Okay. The facts were that the officer said to the dealer, I saw what you just did. Now you're going to give me the money you just earned. Okay. That's what happened. Extortion? I would still argue it's not extortion. Classic extortion. Well, I think in the context of a police officer, there's a difference between obtaining compliance and getting consent. When a police officer who has a right to seize contraband or to search a person gets compliance from that person, that's different than giving consent. It's not arresting him. He's just taking his money, putting it in his pocket, and walking along. And he keeps coming back and doing that from time to time when this drug dealer is out doing his business. That's not extortion? I would still say it's not because it's not obtaining consent. It's saying, I'm going to take this whether you want to or not, whether you consent or not. Yeah, well, it's the kind of coerced consent we were talking about at the beginning, right? You agree it's not like without compulsion. The consent for purposes of extortion is not free and voluntary kind of consent, right? It's a grudging, a coerced consent, right? Right. And this drug dealer knows that he could be arrested and charged with drug dealing. If he's still got some drugs on him, the contraband could be seized. All the money that he just made on that deal or any other deals that day can be seized. He knows all of that. And he would prefer just letting the officer take the money and leaving. And he, the drug dealer, doesn't get arrested. Isn't that extortion? I still stand by what I said, that there's a difference between getting compliance. In the context of a police officer, every officer theft is an extortion. Unfortunately, it's not unheard of for police officers to steal from individuals. And I apologize if I overlooked a case. I couldn't find any cases where a run-of-the-mill theft was held to be extortion by a state or local police officer. Historically, what really distinguished robbery from extortion was some kind of threat of immediate violence where there's the taking of property versus the kind of scenario we've been talking about with the police officer. I agree that there seems to be an imminence aspect to that. Well, tell me this. If the officer in my hypothetical is guilty of extortion and there is that difference between robbery and extortion, does that mean your client committed extortion? No, because the evidence did not show that my client made any kind of demand. The evidence didn't describe at all the searches that he conducted. I thought, though, that he had admitted that he would tell the inmates. He said at an early point, you've been stealing, now I'm going to steal from you. And there was even an inmate who suggested to him that he should keep that money and that he continued to do it. We don't know that he ever stole from the same inmate twice, and that would be the kind of course of conduct that may establish an agreement. Further, his statements, the predicate of that is he already has the green dot number. He searched them. He has it in his hand, and he's declaring, this is what I'm going to do. I'm going to load it up. I'm keeping it. It wasn't a statement to try and get them to give it to him. They didn't have a choice. They have very diminished Fourth Amendment rights, if any, to resist him if he wants to search them and seize them. Well, that drug dealer has very little rights to resistance too, right? Right, and if an officer – I would agree it would be – it's a closer case of extortion if the drug dealer gives him something using his coercive – the guy comes in and he demands the money, and he opens up the register himself and he takes it out. I would say that's not extortion. That's robbery. If he's saying, I'm just going to take this, whether you – He takes it out, you know, and they know if they report him, you know, he's going to burn down their place. I mean, why would that not be extortion? He would be using the fear to get away with it, not to get them to consent to give him the money. They didn't have a choice. Their choice was maybe whether or not to prosecute, but he's relying on that fear to get away with the crime but not to induce their consent. But that's another way of saying they are coerced into consenting, isn't it? I think consent has to exist at the time. As the Supreme Court said in Evans, the extortion is complete at the time of the extortionate conduct. One cannot consent retroactively. To my knowledge, in any other crime with a victim, it's either a consensual taking or a non-consensual taking at the time, and whatever happens later, whether a person turns them in, prosecutes or not, doesn't change the character of how that taking occurred. And I will reserve the rest of my time. Okay, Mr. Dodson. We'll hear from Ms. Schieber. Good morning. Michelle Schieber for the United States. I apologize. Thank you. So I think the courts pointed out that it is the circumstances of the consent leading to coercion that is the driving factor in deciding whether or not a case is extortion or not. And the circumstances of this case, I believe, the government believes demonstrates the coercive effect of what Mr. Harris did. So I was a journalism major in college, and one of the basic tenets of journalism is that in order to tell a complete story, you have to tell the who, the what, the where, the when, the why, and the how. And knowing the who, the what, the when, the where, the why, and the how of this case tells the complete story here and shows why the jury's verdict should be upheld. And I don't think that Mr. Dodson's interpretation of the case fully comprehends the complete circumstances that the telling of the who, the what, the when, the where, and the how would do. So the who is, there are two who's in this case. There's Mr. Harris, and there's the prison inmates. And so what we don't have is a regular citizen in either side. We have a prison guard and an inmate. And Mr. Harris was not just any prison guard. He was a CERT team member. And as a CERT team member, he had a very powerful position that allowed him to shake down the prisoners. And he knew that, and he said as much in his statement, I stop somebody walking, I shake them down. He also had a reputation with the prisoners, a reputation that inspired fear. I'm the asshole out there, he said. The inmates, on the other hand, are citizens, but citizens whose rights have been severely curtailed. This was not an encounter between two ordinary consenting adults, hence the coercive effect. Harris held all the power, and he made sure the inmates knew it. You ain't shit, he told them. The where in this case is important, too. It's a prison setting. It's even more coercive than the example that Judge Pryor gave of an on-the-street encounter with a police officer. It was a setting where the prison guard, or in this case the CERT team member, wields all the power. A setting in which harsh discipline was imposed for violations like possession of contraband. And that harsh discipline was known to every prisoner. The what and the how, hugely important here. The taking of the green card numbers for himself, that was the what. And he took them not to report them, and he made sure the inmates knew that. His own statements made it clear. I'm going to take your money from you. I'm going to load your money. In other words, I'm going to keep that money for me. I'm not turning this in. I'm going to steal from you. I'm going to Robin Hood you. And then the when. The literal answer was 2013. But the most important when here is whenever he wanted. Because he had the power, and he had the opportunity, and every inmate knew that. And then the why. Well, for the money, as so many crimes are often done. But also, if you read his statement, because he enjoyed the power, and he enjoyed utilizing his power. So when you look at the who, the what, the when, the where, and the why, and the how, it becomes clear that the inmates understood that when Harris took those numbers from them, it wasn't to report them as contraband. And that he intended to keep the money for himself. I'm fixing to take your money from you. I'm going to load your money. And as the jury's verdict shows, because the jury understood and inferred from this conduct what was happening, his statements implied or showed that if they pushed back, they would either face reprisal from Harris himself, or they would have to report their own legal activity. And so they failed to act. And there is implicit evidence, or there was a reasonable inference for the jury to infer from the evidence that there were no reports made. So whether acting from fear of violence or fear of exposure, the inmates consented, but that consent was coerced. And however forced, they transferred the numbers from themselves to Harris. And evidence shows that all of the elements of extortion were satisfied. If there are no further questions from the court. Thank you for your time. Thank you, Ms. Schieber. Thank you. That was a compelling way of describing it. It must be from the Jimmy Breslin School of Journalism. Thought on journalism. I want to emphasize the lack of evidence to prove these assertions because we don't even have to consider whether it would qualify as extortion if the evidence doesn't allow the jury to reasonably infer that. The problem here is you have a confession. I have a confession to a taking. It's not threatening immediate violence when he commits the taking, right? Right. He's the prison guard who has the authority, who admits that the inmates fear him. And it's just as Ms. Dodson said. He admits, he confesses that this is the way he does it, right? And what he said was when he already, you know, I'm taking these. He did not give the inmates a choice. And where the lack of evidence comes in is I disagree that there's any evidence to say that an inmate did or didn't complain or that they couldn't. The evidence was that the documentation had been destroyed, the conjure ban laws had been destroyed. He continued working as a prison guard, didn't he? Yes. And continued stealing from them, right, taking their money, taking their green dot card numbers, right? Yes. Why isn't that evidence that he didn't report him, that they didn't report him because if they had, there would have been some kind of disciplinary action, right? Possibly. What we know is that the corruption was rampant throughout that prison. And even if we're not talking about reporting him, there was no evidence that he didn't punish them in some way, put them in administrative segregation or even informally. And to the extent that that bared on the inmate's consent, there was no evidence, again, that he searched the same inmate twice. So even if he did it over a course of time, we do not know that there was this course of conduct that went to a specific inmate. And I think that's the fundamental problem with the government's case here, is that there was no specific inmates. They don't know who these inmates are or whether there was an agreement or consent. And, you know, this court has said in Seigelman, it has to be a specific official act that a person agrees to forego. And we don't have anything specific here. Even with him, we don't know if we're talking about some grievance process that we don't know about because it wasn't in evidence or putting someone in the hole or filing a disciplinary action. So the evidence simply didn't show that an inmate resisted or didn't resist, that an inmate complained or didn't complain. And, again, to the extent that they didn't, the government conceded in trial and through a number of their witnesses that the reason for that had everything to do with self-interest and not with having some kind of an agreement. This court said in, I think, Atkinson, involving a conspiracy, that you can't prove an agreement for purposes of a conspiracy by proving that the alleged conspirators acted in a way that would have furthered a conspiracy if there had been one. And I think that principle applies here, too. Both parties could have acted in their same interest, and it would not be reasonable to infer an agreement because the obvious explanation for that is to avoid self-incrimination. And if there are no other questions, I'll just ask this court to vacate Mr. Harris' conviction and reverse the district court's denial of the Rule 29 motion. Thank you, Mr. Dodson. We have your case, and we'll go to the last case this morning. Story v. Berryhill. Good morning, Mr. Martin. Good morning.